# EXHIBIT 2

# EXHIBIT 2

APN: 191-08-301-003

**WHEN RECORDED, MAIL TO:**
Colonial Bank, N.A.
4670 S. Fort Apache, Suite 250
Las Vegas, Nevada  89147

> The undersigned hereby affirms that this document,
> including any exhibits, submitted for recording does not
> contain the social security number of any person or
> persons. (Per NRS 239B.030)

## DEED OF TRUST AND SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS

        THIS DEED OF TRUST AND SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS ("Deed of Trust") is made as of the 30th day of July, 2007, by **OLYMPIA GROUP, L.L.C.**, a Nevada limited liability company, as trustor (the "Trustor"), to **FIRST AMERICAN TITLE COMPANY OF NEVADA**, as trustee (the "Trustee"), for the benefit of **COLONIAL BANK, N.A.** ("Beneficiary").

**I.**      **GRANTS AND OBLIGATIONS SECURED.**

    **A.**    **Grants.**

        1.01.  Trustor hereby irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Beneficiary, with power of sale and right of entry and possession, all right, title and interest of Trustor in and to that certain real property situated in the County of Clark, State of

1

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svp\17408\0359\deed

Nevada, described in **Exhibit "A"** attached hereto and made a part hereof (the "Land"), together with all right, title and interest of Trustor therein and in and to:

        (a)     All buildings and other improvements now or hereafter located on the Land, all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant), pumps and pumping stations used in connection therewith and all shares of stock evidencing the same, all machinery, equipment, appliances, furnishings, inventory, fixtures, and other property used or useable in connection with the Land and the improvements thereon, including, but not limited to, all storage tanks and pipelines, all gas, electric, heating, cooling, air conditioning, refrigeration and plumbing fixtures and equipment, which have been or may hereafter be attached or affixed in any manner to any building now or hereafter on the Land (the "Improvements").

        (b)     All the rights, rights of way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances, now or hereafter in any way appertaining and belonging to or used in connection with the Land and/or the Improvements, and any part thereof or as a means of access thereto, including, but not limited to, any claim at law or in equity, and any after acquired title and reversion in or to each and every part of all streets, roads, highways and alleys adjacent to and adjoining the same.

        (c)     All rentals, earnings, income, accounts, accounts receivable, deposits, security deposits, receipts, royalties, revenues, issues and profits which, after the date hereof, and while any portion of the indebtedness secured hereby remains unpaid, may accrue from the Land and/or the Improvements and any part thereof, subject, however, to the right, power and authority conferred upon Trustor collect and apply such proceeds set forth herein.

        (d)     All deposits made with or other security given to utility companies by Trustor with respect to the Land and/or the Improvements, and all advance payments of insurance premiums made by Trustor with respect thereto and claims or demands relating to insurance. Any of the foregoing arising or acquired by Trustor after the date hereof, the Land, the Improvements, and the other property described in subparagraphs (a), (b), (c), and (d) of this Section 1.01 are collectively defined hereinafter as the "Property".

    1.02.    Trustor hereby grants a security interest to Beneficiary in all of the following described property and any and all proceeds thereof (sometimes all of such being collectively referred to herein as the "Collateral"):

        (a)     all existing and future goods and tangible personal property located on the Property or wherever located now owned or hereafter acquired by Trustor and used in connection with the use, operation or occupancy of the Property or in construction of the Improvements,

2

Hale Lane Peek Dennison and Howard<br>
Attorneys and Counsellors at Law<br>
Las Vegas, Nevada<br>
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\63\1162\1
svn\17408\0359\deed

including, but not limited to, all appliances, furniture and furnishings, fittings, materials, supplies, equipment and fixtures, and all building material, supplies, and equipment now or hereafter delivered to the Property and installed or used or intended to be installed or used therein; and all renewals or replacements thereof or articles in substitution thereof;

   (b) all general intangibles relating to design, development, operation, management and use of the Property and construction of the Improvements, including, but not limited to, (i) all names under which or by which the Property or the Improvements may at any time be operated or known, all rights to carry on business under any such names or any variant thereof, and all goodwill in any way relating to the Property, (ii) all permits, licenses, authorizations, variances, land use entitlements, approvals and consents issued or obtained in connection with the construction of the Improvements, (iii) all permits, licenses, approvals, consents, authorizations, franchises and agreements issued or obtained in connection with the construction of the Improvements, or the use, occupancy or operation of the Property, (iv) all materials prepared for filing or filed with any governmental agency, and (v) all of Trustor's rights under any contract in connection with the development, design, use, operation, management and construction of the Property;

   (c) all service, engineering, consulting, leasing, architectural and other similar contracts of any nature (including, without limitation, those of any general contractors and subcontractors), as such may be modified, amended or supplemented from time to time, concerning the design, construction, management, operation, occupancy, use, and/or disposition of any portion of or all of the Property;

   (d) all architectural drawings, plans, specification, soil tests, feasibility studies, appraisals, engineering reports and similar materials relating to any portion of or all of the Property;

   (e) all payment and performance bonds or guarantees and any and all modifications and extensions thereof relating to the Property;

   (f) all reserves, deferred payments, deposits, refunds, cost savings and payments of any kind relating to the construction, design, development, operation, occupancy, use and disposition of any portion of or all of the Property;

   (g) to the extent permitted to be assigned by Trustor, all proceeds of any commitment by any lender to extend permanent or additional construction financing to Trustor relating to the Property;

3

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\174080359\deed

(h)    all proceeds and claims arising on account of any damage to or taking of the Property or any part thereof, and all causes of action and recoveries for any loss or diminution in the value of the Property;

(i)    all policies of, and proceeds resulting from, insurance relating to the Property or any of the above collateral, and any and all riders, amendments, extensions, renewals, supplements or extensions thereof, and all proceeds thereof;

(j)    all shares of stock or other evidence of ownership of any part of the Property that is owned by Trustor in common with others, including all water stock relating to the Property, if any, and all documents or rights of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property; and

(k)    all proceeds, whether cash, promissory notes, contract rights, or otherwise, of the sale or other disposition of all or any part of the estate of Trustor in and to the Property now or hereafter existing thereon.

The personal property in which Beneficiary has a security interest includes goods which are or shall become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing pursuant to the terms of the Nevada Uniform Commercial Code. This filing is to be recorded in the real estate records of the county in which the Property is located. In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | **OLYMPIA GROUP, L.L.C., a a Nevada limited liability company** |
| Address of Debtor: | See Paragraph 5.12 |
| Debtor's State of Nevada Organizational Filing Number: | LLC6986-1996 |
| Name of Secured Party: | **COLONIAL BANK, N.A.** |
| Address of Secured Party: | See Paragraph 5.12 |

4

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

Trustor warrants and agrees that there is no financing statement covering the foregoing Collateral, the Property, or any part thereof, on file in any public office, except for those in favor of Beneficiary.

1.03. Trustor hereby assigns and transfers to Beneficiary, as additional security, all damages, royalties and revenue of every kind, nature and description whatsoever that Trustor may be entitled to receive from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of the Property, with the right in Beneficiary to receive and receipt therefor, and apply the same to the indebtedness secured hereby either before or after any default hereunder, and Beneficiary may demand, sue for and recover any such payments but shall not be required to do so.

**B.    Obligations Secured.**

1.04. This Deed of Trust is given for the purpose of securing, in such order of priority as Beneficiary may determine:

(a)    Payment of the indebtedness evidenced by a Revolving Line of Credit Promissory Note Secured By Deed of Trust of even date herewith and any renewals, extensions, modifications or amendments thereof, in the principal amount of **TWENTY FIVE MILLION AND NO/100THS DOLLARS ($25,000,000.00)** (the "Note"), executed by Trustor, Southern Highlands Development Corporation, a Nevada corporation, and Olympia Land Corporation, a Nevada corporation (collectively, the "Borrower"), and payable to Beneficiary, together with interest thereon and late charges as provided therein, which is made a part hereof by reference. The Note contains a provision for changes in the rate of interest charged thereunder based upon the floating commercial loan rate of Beneficiary publicly announced from time to time as Beneficiary's Base Rate. Each change in the interest rate resulting from a change in Beneficiary's Base Rate shall become effective as of the day on which such change occurs. Notwithstanding the amount outstanding at any particular time, this Deed of Trust secures a maximum principal amount specified above, plus all interest, costs and attorneys' fees as specified in that certain Revolving Line of Credit Loan Agreement of even date herewith (the "Loan Agreement") between Borrower and Beneficiary. All advances under the Note and Loan Agreement by Beneficiary are obligatory and are secured by this Deed of Trust. All such obligatory advances and interests and fees thereon will have the same priority as the funds initially advanced under the Note and Loan Agreement. According to the Loan Agreement, the unpaid balance of the loan evidenced by the Note may at certain times be zero. Notwithstanding this fact, Beneficiary is obligated under the terms of the Loan Agreement to advance to the Trustor up to the amount specified above. Therefore, the interest of the Beneficiary will remain in full force and effect, notwithstanding a zero balance under the Note.

5

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

(b)     Payment of such further sums as Borrower and/or Trustor, or any successor in ownership, hereafter may borrow from Beneficiary when evidenced by another note or notes, reciting it is so secured, payable to Beneficiary or order and made by Borrower or Trustor, or any successor in ownership, and all renewals, extensions, modifications or amendments of such note or notes.

(c)     Payment of all other moneys herein agreed or provided to be paid by Trustor and/or Borrower and performance of all other obligations of Trustor and/or Borrower contained herein and in the Loan Agreement and any amendment, modification or change hereto or thereto, and any other loan documents executed in connection with the Loan Agreement, including payment of all sums expended or advanced by Beneficiary hereunder, together with interest thereon at the rate payable under the Note, in the preservation, enforcement and realization of the rights of Beneficiary hereunder or under any of the other obligations secured hereby, including, without limitation, attorney's fees, court costs, other litigation expenses and foreclosure expenses.

(d)     Performance of each agreement of Trustor and/or Borrower contained in any other agreement given by Trustor and/or Borrower to Beneficiary which is for the purpose of further securing any indebtedness or obligation secured hereby.

## II.   COVENANTS OF TRUSTOR.

### A.   Condition and Operation of Property.

2.01.   Trustor agrees (i) to keep the Property in good condition and repair, (ii) not to commit or permit any waste or deterioration of the Property, (iii) not to commit or permit any removal, demolition or substantial alteration of the Property except for such alterations as may be required by law, ordinance, rule, regulation or order of any governmental authority having jurisdiction over the Property other than as contemplated under the Loan Agreement, (iv) to complete in good and workmanlike manner any construction or restoration which may be performed on the Property and those alterations contemplated in the Loan Agreement, (v) to promptly restore any portion of the Property which may be damaged or destroyed and (vi) subject to the Loan Agreement, not to permit any mechanics' or materialmen's liens against the Property, and (vii) to perform each of Trustor's obligations set forth in the Loan Agreement.

2.02.   Trustor shall not commit, permit or allow to exist, any violation of any law, ordinance, rule, regulation or order of any governmental authority having jurisdiction over the Property or of any matter or record affecting the Property.

6

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

2.03.    Trustor shall maintain, or cause to be maintained, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property, whether such income or expense be realized by Trustor or by any other person or entity whatsoever excepting persons unrelated to and unaffiliated with Trustor and who leased from Trustor portions of the Property for the purposes of occupying the same.  Upon the request of Beneficiary, Trustor shall prepare and deliver to Beneficiary such financial statements regarding operation of the Property as Beneficiary may reasonably request.  Beneficiary, or its designee, shall have the right from time to time during normal business hours to examine such books, records and accounts and to make copies or extracts therefrom.

**B.**     **Insurance.**

2.04.    Trustor shall, at all times, provide, maintain and keep in force all of the following:

(a)     A policy or policies of commercial general liability insurance with respect to the Property, including but not limited to owners and contractors liability, contractual liability, personal injury, completed operations, broad form property damage, insuring Trustor and Beneficiary, as their interests may appear, against loss for any occurrence resulting in bodily injury to or the death of one or more persons and consequential damages arising therefrom and property damage involving injury or destruction of the tangible property of third parties in the amount of no less than $2,000,000.00, combined single limit.  All policies should be on an "occurrence" basis with Beneficiary named as an additional insured under such policy or policies.

(b)     A policy or policies of fire hazard insurance insuring the Property against loss or damage on an "Broad Form" basis and against such other risks or hazards as Beneficiary may from time to time reasonably designate in the amount of not less than 100% of the full replacement value of any improvements constructed on the Property without deduction for physical depreciation.  Beneficiary shall be named as Loss Payee under such policy or policies.

(c)     If requested by Beneficiary, flood insurance upon the Property in the event that such insurance is available pursuant to the provisions of the Flood Disaster Protection Act of 1973 or other applicable legislation.  Beneficiary shall reserve the right to require that Trustor secure flood insurance in excess of the amount provided by the Flood Disaster Protection Act of 1973, if such insurance is commercially available, up to the amount provided in Paragraph 2.04(a) hereof.

7

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

(d)     If requested by Beneficiary, statutory workers' compensation insurance (including employer's liability in amounts required by the State Industrial Insurance System and, if applicable, insurance covering claims of workers against employers arising under Federal law) covering Trustor and employees of Trustor, in such form as is reasonably satisfactory to Beneficiary and in amounts not less than any minimum amounts established by law.

(e)     Such other insurance, and in such amounts, as may from time to time be reasonably required by Beneficiary.

Such insurance policies shall be updated at Beneficiary's request, but not less frequently than annually during the Loan term.

2.05.     All policies required by Paragraph 2.04 shall (i) be issued by companies duly qualified and licensed to do such business in the State of Nevada and approved by Beneficiary, (ii) shall be subject to the reasonable approval of Beneficiary as to the insuring companies, amount, content and forms of policies and expiration dates, (iii) contain a Non-Contributory Standard Mortgagee Clause and the Lender's Loss Payable Endorsement (Form 438 BFU NS), or their equivalents, in favor of Beneficiary, (iv) provide that the proceeds thereof shall be payable to Beneficiary (to the extent of its interest) (v) provide that it cannot be modified or cancelled, to the extent that such modification or cancellation substantially effects the Property, or Beneficiary's interest thereon, without thirty days' prior written notice to Beneficiary, and (vi) be primary and non-contributory with any other insurance of Beneficiary.

2.06.     Trustor shall furnish to Beneficiary a certificate of each policy required under Paragraph 2.04 and, at least thirty days prior to expiration of any such policy, proof of issuance of a policy continuing in force the coverage provided by the expiring policy.  In the event Trustor shall fail to maintain the insurance coverage required by this Deed of Trust, Beneficiary may (but shall be under no obligation to) take out the required policies of insurance and pay the premiums on the same or may make such repairs or replacements as are necessary and provide for payment thereof; and all amounts so advanced therefor by Beneficiary shall become an additional obligation of Trustor to Beneficiary, which amounts, together with interest thereon at the Default Rate (as defined and provided for in the Note), Trustor agrees to pay.

2.07.     After the happening of any casualty insured against under Paragraph 2.04, Trustor shall give prompt written notice thereof to Beneficiary.

2.08.     Trustor hereby assigns to Beneficiary all insurance proceeds which it may be entitled to receive and such proceeds shall be delivered to and held by Beneficiary to be applied to the restoration of any portion of the Property that has been damaged or destroyed to the same

8

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

condition, character and value as existed prior to such damage or destruction so long as the following conditions have been satisfied: (i) Trustor is not in default hereunder, (ii) Beneficiary's security is not materially impaired and (iii) Trustor deposits with it the additional amounts necessary to accomplish such restoration. The proceeds disbursed for restoration will be released to Trustor under the procedures set forth in the Loan Agreement. In the event that the above conditions are not satisfied, Beneficiary shall have the option, to apply the insurance proceeds upon any indebtedness secured hereby in such order as Beneficiary may determine or release such proceeds to Trustor without such release being deemed a payment of any indebtedness secured hereby, rather than to apply such proceeds to the restoration of the Property. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. If the Property is restored at a cost less than the available insurance proceeds, then such excess proceeds shall, if Trustor is not then in default hereunder, be paid over to Trustor.

2.09.   In the event of the foreclosure of this Deed of Trust or other transfer of the title to the Property in extinguishment, in whole or in part, of the indebtedness secured hereby, all right, title and interest of Trustor in and to any insurance policy then in force shall pass to the purchaser or grantee to the extent that such insurance policy affects the Property.

**C.   Payments.**

2.10.   Trustor shall pay the principal, interest and other charges due under the Note and the Loan Agreement according to their terms.

2.11.   Trustor shall pay or cause to be paid:

(a)   Prior to the assessment of any penalty or delinquency, all taxes, assessments and other governmental or public charges affecting the Property, including assessments on appurtenant water stock, and any accrued interest, cost and/or penalty thereon and shall submit paid receipt therefor to Beneficiary upon request.

(b)   When due, all encumbrances (including any debt secured by deed of trust), ground rents, liens, and/or charges, with interest, on the Property or any part thereof which appear to be prior or superior hereto and all costs, fees and expenses related thereto.

(c)   When due, all charges for utilities or services including, but not limited to, electricity, gas, water and sewer.

2.12.   Upon the occurrence of a default by Trustor hereunder, Trustor shall pay to Beneficiary on the first day of each month, together with and in addition to the regular installments

9

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\31162\1
svn\17408\0359\deed

of principal and interest due under the Note, until the indebtedness secured hereby is paid in full, an amount equal to one-twelfth (1/12) of the yearly taxes and assessments, insurance premiums, lease rentals and other similar charges (including any amounts which may become payable by Trustor pursuant to Paragraph 2.28 hereinbelow) as estimated by Beneficiary to be sufficient to enable Beneficiary to pay at least thirty (30) days before they become due, all taxes, assessments, insurance premiums, and other similar charges against the Property. Beneficiary shall not be obligated to pay interest on any such sums. Upon demand of Beneficiary, Trustor shall deliver to Beneficiary such additional sums as are necessary to enable Beneficiary to pay such taxes, assessments, insurance premiums and similar charges.

2.13. Trustor shall pay immediately, upon demand, after expenditure, all sums expended or expenses incurred by Trustee and/or Beneficiary under any of the terms of this Deed of Trust, including without limitation, any fees and expenses (including reasonable attorneys' fees) incurred in connection with any reconveyance of the Property or any portion thereof, or to compel payment of the Note or any portion of the indebtedness evidenced thereby or in connection with any default thereunder, including without limitation attorneys' fees incurred in any bankruptcy or judicial or nonjudicial foreclosure proceeding, with interest from date of expenditure at the Interest Rate provided for in the Note.

2.14. Trustor shall pay the amount demanded by Beneficiary or its authorized servicing agent for any statement regarding the obligations secured hereby; provided, however, that such amount may not exceed the maximum amount allowed by law at the time request for the statement is made.

**D.   Condemnation.**

2.15. If the Property, or any part thereof, is taken or damaged by reason of any public improvement or condemnation proceeding, or in any other manner, Beneficiary shall be entitled to all compensation, awards and other payments or relief therefor to which Trustor shall be entitled, and shall be entitled at its option to commence, appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage to the extent of the interests of Trustor therein. All such compensation, awards, damages, rights of action and proceeds to which Trustor shall be entitled (the "Proceeds") are hereby assigned to Beneficiary, who shall after deducting therefrom all its reasonable expenses, including attorneys' fees, apply or release the Proceeds with the same effect and as provided in Paragraph 2.08 above with respect to disposition of insurance proceeds; provided, that if there are any excess Proceeds after application thereof to the restoration of the Property, Beneficiary shall be entitled to apply such excess to the reduction of the principal balance due under the Note without any adjustment in the dollar amount of the monthly installments due under the Note. Trustor agrees to execute such further

10

::ODMA\PCDOCS\HLRNODOCS\31162\1
svn\1740E\0359\deed

assignments of the Proceeds as Beneficiary or Trustee may require. Nothing herein contained shall prevent the accrual of interest as provided in the Note on any portion of the Proceeds to be applied to the principal balance due under the Note until the Proceeds are received by Beneficiary.

**E.    Rents and Leases.**

2.16.    Trustor hereby absolutely and unconditionally assigns and transfers to Beneficiary all the leases, income, rent, issues, deposits, profits and proceeds of the Property to which Trustor may be entitled, whether now due, past due or to become due, and hereby gives to and confers upon Beneficiary the right, power and authority to collect such income, rents, issues, deposits, profits and proceeds of the Property to which Trustor may be entitled, whether now due, past due or to become due. The foregoing assignment constitutes an irrevocable direction and authorization of all tenants under all leases now or hereafter affecting any portion of the Property (the "Leases") to pay all rent, income and profits into an account specified by Beneficiary upon demand and without further consent or other action by Trustor. Trustor irrevocably appoints Beneficiary its true and lawful attorney, at the option of Beneficiary at any time, to demand, receive and enforce payment, to give receipts, releases, and satisfactions, and to sue, either in the name of Trustor or in the name of Beneficiary, for all such income, rents, issues, deposits, profits and proceeds and apply the same to the indebtedness secured hereby. It is understood and agreed that neither the foregoing assignment of leases, income, rents, issues, deposits, profits and proceeds to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies under this Paragraph 2.16 or under Paragraph 2.26 hereof shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Notwithstanding anything to the contrary contained herein or in the Note secured hereunder, so long as no Event of Default, as defined in the Loan Agreement shall have occurred, Trustor shall have a license to collect all income, rents, issues, profits and proceeds from the Property as trustee for the benefit of Beneficiary and Trustor shall apply the funds so collected as set forth in the Loan Agreement. Upon the occurrence of an Event of Default, such license shall be deemed revoked and any rents received thereafter by Trustor shall be delivered in kind to Beneficiary. Trustor hereby irrevocably constitutes and appoints Beneficiary its true and lawful attorney-in-fact to enforce in Trustor's name or in Beneficiary's name or otherwise all rights of Trustor in the instruments, including without limitation checks and money orders, tendered as payments of rents and to do any and all things necessary and proper to carry out the purposes hereof.

**F.    Other Rights and Obligations.**

2.17.    In addition to any other grant, transfer or assignment effectuated hereby, without in any manner limiting the generality of the grants in Article I hereof, Trustor shall assign to Beneficiary Trustor's interest in all agreements, contracts, leases, licenses and permits affecting the

11

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631163\1
svn\17408\0359\deed

Property in any manner whatsoever, such assignments to be made, if so requested by Beneficiary, by instruments in form satisfactory to Beneficiary but no such assignment shall be construed as a consent by Beneficiary to any agreement, contract, license or permit so assigned, or to impose upon Beneficiary any obligations with respect thereto.

2.18.   In the event of the passage, after the date of this Deed of Trust, of any law deducting from the value of the Property for the purpose of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust, or the manner of the collection of any such taxes, so as to affect this Deed of Trust, or imposing payment of the whole or any portion of any taxes, assessments or other similar charges against the Property upon the Beneficiary, the indebtedness secured hereby shall immediately become due and payable at the option of the Beneficiary; provided, however, that such election by Beneficiary shall be ineffective if such law either (a) shall not impose a tax upon Beneficiary nor increase any tax now payable by Beneficiary or (b) shall impose a tax upon Beneficiary or increase any tax now payable by Beneficiary and prior to the due date:  (i) Trustor is permitted by law and can become legally obligated to pay such tax or the increased portion thereof (in addition to all interest, additional interest and other charges payable hereunder and under the Note without exceeding the applicable limits imposed by the usury laws of the State of Nevada); (ii) Trustor does pay such tax or increased portion; and (iii) Trustor agrees with Beneficiary in writing to pay, or reimburse Beneficiary for the payment of, any such tax or increased portion thereof when thereafter levied or assessed against the Property or any portion thereof.  The obligations of Trustor under such agreement shall be secured hereby.

2.19.   If required by Beneficiary at any time during the term of this Deed of Trust, Trustor will execute and deliver to Beneficiary, in form satisfactory to Beneficiary, an additional security agreement and/or financing statement covering all personal property of Trustor which may at any time be furnished, placed on, or annexed or made appurtenant to the Property and used, useful or held for use, in the operation of the improvements thereon.  Any breach of or default under such security agreement shall constitute an event of default under this Deed of Trust.

2.20.   Trustor shall do any and all acts which, from the character or use of the Property or the Collateral, may be reasonably necessary to protect and preserve the security of Beneficiary, the specific enumerations herein not excluding the general.

2.21.   Trustor will faithfully perform each and every covenant to be performed by Trustor under any lien or encumbrance upon or affecting the Property, including, without limiting the generality hereof, mortgages, deeds of trust, leases, declaration of covenants, easements, conditions and/or restrictions and other agreements which affect the Property, in law or in equity, which Beneficiary reasonably believes may be prior and superior to the lien or charge of this Deed of Trust.

12

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

A breach of or a default under any such lien or encumbrance shall constitute an event of default under this Deed of Trust.

2.22.   Upon election of either Beneficiary or Trustee so to do, employment of an attorney is authorized and payment by Trustor of all attorneys' fees, costs and expenses in connection with any action and/or actions (including the cost of evidence or search of title), which may be brought for the foreclosure of this Deed of Trust, and/or for possession of the property covered hereby, and/or for the appointment of a receiver, and/or for the enforcement of any covenant or right in this Deed of Trust contained as hereinafter provided shall be secured hereby.

2.23.   No personal property covered by the security interest granted herein may be removed from the Property without the prior written consent of Beneficiary unless Trustor shall immediately replace such personal property with similar property of equivalent value on which Beneficiary has a valid first lien.

2.24.   Except as otherwise provided herein, in the event that the interest of Trustor in the Property, or any part thereof, or any interest therein is sold, conveyed, alienated, further encumbered or otherwise transferred by the Trustor, voluntarily or involuntarily, whether by operation of law or otherwise, the Note, irrespective of the maturity dates expressed therein, at the option of Beneficiary, and without demand or notice, shall immediately become due and payable. In the event that Beneficiary does not elect to declare the Note immediately due and payable, then, unless indicated otherwise in writing by Beneficiary, Trustor shall nevertheless remain primarily liable for the obligations hereunder and under the Note and any other instrument securing the Note. This provision shall apply to each and every sale, conveyance, alienation, encumbrance or transfer, regardless whether or not Beneficiary has consented to, or waived, Beneficiary's rights hereunder, whether by action or non-action in connection with any previous sale, conveyance, alienation, encumbrance or transfer and whether or not the holder has received any payments after said transfer.

Notwithstanding the foregoing, provided that no Event of Default then exists under the Loan Agreement, or any obligation secured hereby, Beneficiary shall, upon request of Trustor, cause to be released from the lien hereof one (1) or more legally described and assessed parcel and improvements thereon upon payment to Beneficiary in the amount applicable to each such parcel as set forth in **Exhibit "B"** attached hereto and by this reference made a part hereof. Any such partial release shall be subject to either (a) a reduction in the maximum committed amount under the loan evidenced by the Note in an amount reasonably determined by Beneficiary, or (b) the grant of additional collateral by Trustor to secure such loan in all respects acceptable to Beneficiary. Trustor shall pay any and all cost and expense incurred in connection with such releases.

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\531162\1
svm\17408\0359\deed

2.25.   Trustor agrees to execute such documents and take such action as Beneficiary shall reasonably determine to be necessary or desirable to further evidence, perfect or continue the perfection of the lien and security interest granted by Trustor herein.

2.26.   Following a ten (10) day written notice to Trustor (unless Beneficiary reasonably determines that emergency circumstances exist which would make the giving of such notice impractical), at the time and in the manner herein provided, Beneficiary may, without releasing Trustor from any obligation hereunder and without waiving its right to declare a default or impairing any declaration of default as herein provided or any sale proceeding predicated thereon:

(a)   Make any payment or perform any act in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary and Trustee being authorized to enter upon and take possession of the Property for such purposes;

(b)   Commence, appear in and/or defend any action or proceedings purporting to affect the security hereof, and/or any additional or other security therefor, the interests, rights, powers and/or duties of Trustee and/or Beneficiary hereunder, whether brought by or against Trustor, Trustee or Beneficiary;

(c)   Pay, purchase, contest or compromise any claim, debt, lien, charge or encumbrance which in the judgment of either may affect or appear to affect the security of this Deed of Trust, the interest of Beneficiary or the rights, powers and/or duties of Trustee and/or Beneficiary hereunder; and

(d)   Upon an event of default hereunder or under the Note, Beneficiary is authorized either by itself or by its agents to be appointed by it for that purpose or by a receiver appointed by a court of competent jurisdiction, to enter into and upon and take and hold possession of any portion or all of the Property, both real and personal, and exclude Trustor and all other persons therefrom; and to operate and manage the Property and rent and lease the same, perform such reasonable acts of repair or protection as may be reasonably necessary or proper to conserve the value thereof, and collect any and all income, rents, issues, profits and proceeds therefrom, the same being hereby assigned and transferred to Beneficiary for the benefit and protection of Beneficiary, and from time to time apply and/or accumulate such income, rents, issues, profits and proceeds in such order and manner as Beneficiary or such receiver in its sole discretion shall consider advisable, to or upon the following:   the expense of receivership, if any, the proper costs of upkeep, maintenance, repair and/or operation of the Property, the repayment of any sums theretofore or thereafter advanced pursuant to the terms of this Deed of Trust upon the indebtedness secured hereby, the taxes and assessments upon the Property then due or next to become due, and/or upon the unpaid principal of such indebtedness. The collection and/or receipt of income, rents, issues, profits

14

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\311162\1
svn\17408\0359\deed

and/or proceeds from the Property by Beneficiary, its agent or receiver, after declaration of default and election to cause the Property to be sold under and pursuant to the terms of this Deed of Trust shall not affect or impair such default or declaration of default or election to cause the Property to be sold or any sale proceedings predicated thereon, but such proceedings may be conducted and sale effected notwithstanding the receipt and/or collection of any such income, rents, issues, profits and/or proceeds.  Any such income, rents, issues, profits and/or proceeds in the possession of Beneficiary, its agent or receiver, at the time of sale and not theretofore applied as herein provided, shall be applied in the same manner and for the same purposes as the proceeds of the sale.  Neither Trustee nor Beneficiary shall be under any obligation to make any of the payments or do any of the acts referred to in this Paragraph and any of the actions referred to in this Paragraph may be taken by Beneficiary irrespective of whether any notice of default or election to sell has been given hereunder and without regard to the adequacy of the security for the indebtedness evidenced by the Note.

## III.   DEFAULTS AND REMEDIES.

### A.   Defaults.

3.01.   Trustor shall be in default hereunder upon the breach of any covenant or warranty contained herein, or if an Event of Default shall have occurred and be continuing under the Loan Agreement, the Note, or any other obligation secured hereby, subject to any applicable notice requirement and opportunity to cure.

### B.   Remedies.

3.02.   Upon the occurrence of any default hereunder, or under the Note, the Loan Agreement or any other documents executed in connection herewith, then and in each such event, Beneficiary may declare all sums secured hereby immediately due and payable either by commencing an action to foreclose this Deed of Trust as a mortgage, or by the delivery to Trustee of a written declaration of default and demand for sale and of written notice of default and of election to cause the Property to be sold, which notice Trustee shall cause to be duly filed for record in case of foreclosure by exercise of the power of sale herein.  Should Beneficiary elect to foreclose by exercise of the power of sale herein, Beneficiary shall also deposit with Trustee this Deed of Trust, the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require, and notice of sale having been given as then required by law and after lapse of such time as may then be required by law after recordation of such notice of default, Trustee, without demand on Trustor, shall sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time

15

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed or deeds conveying the Property, or any portion thereof, so sold, but without any covenant or warranty, express or implied. The recitals in such deed or deeds of any matters or facts, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at such sale.

       3.03.   Beneficiary, from time to time before Trustee's sale, may rescind any such notice of breach or default and of election to cause the Property to be sold by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, and of election to cause the Property to be sold to satisfy the obligations hereof, nor otherwise affect any provision, agreement, covenant or condition of the Note, the Loan Agreement and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties hereunder.

       3.04.   After deducting all costs, fees and expenses of Trustee and of this Trust, including the cost of evidence of title in connection with sale and attorneys' fees, Trustee shall apply the proceeds of sale as required by applicable law.

       3.05.   If Beneficiary at any time holds additional security for any obligations secured hereby, it may enforce the terms hereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder, and may apply the proceeds upon the indebtedness secured hereby without affecting the status of or waiving any right to exhaust all or any other security, including the security hereunder, and without waiving any breach or default or any right or power whether exercised hereunder or contained herein or in any such other security.

       3.06.   No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this instrument to Trustee or Beneficiary or to which either of them may be otherwise entitled, may be exercised concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

       3.07.   Subject to any notice requirement and opportunity to cure contained herein, in the event of a default hereunder, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under it, and without regard to the then value of the Property or the interest of

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

## IV.   COLLATERAL.

4.01.   With respect to the security interest granted in paragraph 1.02, Beneficiary shall have all the rights and remedies granted to a secured party under Article 9 of the Uniform Commercial Code, as well as all other rights and remedies available at law or in equity. Trustor shall, upon the demand of Beneficiary, assemble all of such personal property and make it available to Beneficiary at the Property, which is hereby agreed to be reasonably convenient to Beneficiary. The proceeds of any sale of such personal property shall be applied first to the expenses of Beneficiary in retaking, holding, preparing for sale, selling or similar matters, including reasonable attorney's fees.

4.02.   Until Beneficiary exercises its right to collect proceeds of the Collateral pursuant hereto, Trustor will collect with diligence any and all proceeds of the Collateral. Upon written request by Beneficiary, any proceeds received by Trustor shall be in trust for Beneficiary, and Trustor shall keep all such collections separate and apart from all other funds and property so as to be capable of identification as the property of Beneficiary and shall deliver such collections at such time as Beneficiary may request in the identical form received, properly endorsed or assigned when required to enable Beneficiary to complete collection thereof.

4.03.   Trustor shall (i) permit representatives of Beneficiary to inspect the Collateral and Trustor's books and records relating to the Collateral and make extracts therefrom and to arrange for verification of the amount of Collateral, under procedures acceptable to Beneficiary, at Trustor's expense; (ii) promptly notify Beneficiary of any attachment or other legal process levied against any of the Collateral and any information received by Trustor relative to the Collateral, Trustor's debtors or other persons obligated in connection therewith, which may in any way affect the value of the Collateral or the rights and remedies of Beneficiary in respect thereto; (iii) reimburse Beneficiary upon demand for any and all costs, including without limitation reasonable attorneys' and accountants' fees, and other expenses incurred in collecting any sums payable by Trustor under any obligation secured hereby, or in the checking, handling and collection of the Collateral and the preparation and enforcement of any agreement relating thereto; (iv) notify Beneficiary of each location at which the Collateral is or will be kept, other than for temporary processing, storage or similar purposes, and of any removal thereof to a new location, including without limitation each

17

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

office of Trustor at which records relating to the Collateral are kept; (v) provide, maintain and deliver to Beneficiary certificates of insurance insuring the Collateral against loss or damage by such risks and in such amounts, forms and by such companies as Beneficiary may require and with loss payable to Beneficiary, and in the event Beneficiary takes possession of the Collateral, the insurance policy or policies and any unearned or returned premium thereon shall at the option of Beneficiary become the sole property of Beneficiary; (vi) do all acts necessary to maintain, preserve and protect all Collateral, keep all Collateral in good condition and repair and prevent any waste or unusual or unreasonable depreciation thereof; and (vii) join with Beneficiary at its request from time to time in executing financing statements, amendments thereto and continuation statements, and pay the cost of the filing of the same whenever Beneficiary deems desirable, and execute and deliver to Beneficiary further documents and instruments and do such other acts and things as Beneficiary may reasonably request in order to effectuate fully the purposes and intent hereof. Trustor hereby authorizes Beneficiary to file financing statements, amendments, and continuation statements in such filing offices as Beneficiary may determine appropriate in connection with the security interest granted herein.

       4.04.   Beneficiary may at any time, without prior notice to Trustor, collect proceeds of the Collateral and may give notice of assignment to any and all of Trustor's debtors, and Trustor does hereby irrevocably constitute and appoint Beneficiary its true and lawful attorney-in-fact to enforce in Trustor's name or in Beneficiary's name or otherwise all rights of Trustor in the Collateral and to do any and all things necessary and proper to carry out the purposes hereof; provided, however, Trustor shall have the right to collect, retain, use and enjoy such proceeds subject to the terms hereof and the documents securing Trustor's obligations thereunder prior to any default under the Loan Agreement or any of said documents. It is hereby recognized that the power of attorney herein granted is coupled with an interest and shall not be revocable and Beneficiary shall have the right to exercise this power of attorney upon any default under the Loan Agreement, hereunder or any of the documents securing Trustor's obligations thereunder. (Beneficiary shall promptly notify Trustor of any action taken by Beneficiary pursuant to this provision but Beneficiary's failure to do so shall not invalidate any such act, affect any of Trustor's obligations to Beneficiary or give rise to any right, claim or defense on the part of Trustor).

## V.    MISCELLANEOUS PROVISIONS.

       5.01.   By accepting payment of any sum secured hereby after its due date or in an amount less than the sum due, Beneficiary does not waive its rights either to require prompt payment when due of all other sums so secured or to declare a default as herein provided for failure to pay the total sum due.

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\63116?\1
svn\17408\0359\deed

5.02.    At any time, or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee may:  reconvey any part of the Property; consent in writing to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

5.03.    Beneficiary shall be subrogated for further security to the lien, although released of record, of any and all encumbrances paid out of the proceeds of the loan secured by this Deed of Trust.

5.04.    Beneficiary is authorized by itself, its agents, employees or workmen, to enter at any reasonable time upon any part of the Property for the purpose of inspecting the same, and for the purpose of performing any of the acts it is authorized to perform under the terms of the Loan Agreement and this Deed of Trust.

5.05.    Subject to the provisions of Paragraph 2.24 hereof, this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note, now or hereafter and whether or not named as Beneficiary herein.  In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

5.06.    Trustee, upon presentation to it of an affidavit signed by or on behalf of Beneficiary, setting forth any fact or facts showing a default by Trustor under any of the terms or conditions of this Deed of Trust, is authorized to accept as true and conclusive all facts and statements in such affidavit and to act hereunder in complete reliance thereon.

5.07.    If any provision hereof should be held unenforceable or void, then such provision shall be deemed separable from the remaining provisions and shall in no way affect the validity of this Deed of Trust.

5.08.    Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The Trust created hereby is irrevocable by Trustor.

19

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

5.09.   Trustee shall be under no obligation to notify any party hereto of any action or proceeding of any kind in which Trustor, Beneficiary and/or Trustee shall be a party, unless brought by Trustee, or of any pending sale under any other deed of trust.

5.10.   Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, substitute a successor or successors for the Trustee named herein or acting hereunder.

5.11.   The right to plead any and all statutes of limitation as a defense to any demand secured by this Deed of Trust is hereby waived to the full extent permitted by law.

5.12.   All notices hereunder shall be deemed to have been duly given if personally delivered or mailed by United States registered or certified mail, with return receipt requested, postage prepaid to the parties at the following addresses (or at such other addresses as shall be given in writing upon any party to the others) and shall be deemed complete upon any such mailing:

To Trustor:          **Olympia Group, L.L.C.**
                     **11411 Southern Highlands Parkway**
                     **Suite 300**
                     **Las Vegas, Nevada  89141**

To Beneficiary:      **Colonial Bank, N.A.**
                     **4670 S. Fort Apache, Suite 250**
                     **Las Vegas, Nevada  89147**

5.13.   Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth above.

5.14.   Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust and the Note for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

5.15.   Without affecting the liability or obligations of any person, including Trustor, for the performance of any obligations secured hereby (excepting only any person or property otherwise expressly released in writing by Beneficiary), Beneficiary may from time to time and without notice release any person liable for payment of any of said indebtedness or the performance

20

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

of said obligations, extend the time of payment or otherwise alter the terms of any of said obligations, accept additional security therefor of any kind, including trust deeds or mortgages, or alter, substitute or release any property securing said obligations.

5.16.   The provisions of this Deed of Trust governing the contractual rights and obligations of Trustor, Beneficiary and Trustee shall be construed according to the laws of the State of Nevada. The provisions of this Deed of Trust are intended to be supplemental and in addition to the provisions contained in the Loan Agreement. Any assignment of this Deed of Trust shall be considered an assignment of the Note and the Loan Agreement.

5.17.   This Deed of Trust may be executed in counterparts, all of which executed counterparts shall together constitute a single document. Signature pages may be detached from the counterparts and attached to a single copy of this document to physically form one document.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust and Security Agreement and Fixture Filing with Assignment of Rents as of the day first written above.

OLYMPIA GROUP, L.L.C., a Nevada
limited liability company

By: _____

GARRY V. GOETT
Manager

"Trustor"

21

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\631162\1
svn\17408\0359\deed

STATE OF NEVADA          )
                         )ss.
COUNTY OF CLARK          )

    This instrument was acknowledged before me on _August 7_____, 2007
by Garry V. Goett, as Manager of Olympia Group, L.L.C.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
RHIANNA L. HOFFMAN
Appt. No. 05-99355-1
My Appt. Expires Feb. 11, 2008

_Rhianna L Hoffman_
Notary Public
My Commission Expires: _2-11-08_

22

::ODMA\PCDOCS\HLRNODOCS\631162\1
svrl\1740$\0359\deed

EXHIBIT "A"

A PORTION OF THE SOUTHWEST QUARTER (SW 1/4) OF SECTION 08, TOWNSHIP 23 SOUTH, RANGE 61 EAST, M.D.M., CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER (SW 1/4) OF SAID SECTION 08;

THENCE ALONG THE SOUTH LINE THEREOF, NORTH 89°38'49" WEST, 449.90 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF LAKE MEAD/I-15 INTERCHANGE, SAID POINT BEING THE TRUE POINT OF BEGINNING;

THENCE CONTINUING ALONG THE SAID SOUTH LINE THEREOF, NORTH 89°38'49" WEST, 654.46 FEET;

THENCE DEPARTING SAID SOUTH LINE, NORTH 85°29'48" WEST, 70.18 FEET;

THENCE NORTH 69°03'27" WEST, 93.82 FEET;

THENCE NORTH 60°52'05" WEST, 132.50 FEET;

THENCE NORTH 57°16'37" WEST, 62.57 FEET;

THENCE NORTH 31°28'43" WEST, 294.00 FEET;

THENCE NORTH 40°55'16" WEST, 203.16 FEET;

THENCE NORTH 85°16'21" WEST, 89.48 FEET;

THENCE NORTH 02°23'48" EAST, 18.22 FEET;

THENCE NORTH 00°28'28" WEST, 334.73 FEET;

THENCE FROM A TANGENT BEARING NORTH 30°14'21" WEST, CURVING TO THE RIGHT ALONG THE ARC OF A 240.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, THROUGH WHICH A RADIAL LINE BEARS SOUTH 59°45'39" WEST, THROUGH A CENTRAL ANGLE OF 29°42'59" AND AN ARC LENGTH OF 124.48 FEET;

THENCE NORTH 00°31'22" WEST, 433.67 FEET;

THENCE NORTH 29°11'17" WEST, 55.29 FEET;

THENCE NORTH 00°42'12" WEST, 167.22 FEET;

THENCE NORTH 20°26'14" EAST, 44.46 FEET;

THENCE NORTH 07°46'33" WEST, 78.96 FEET;

THENCE NORTH 21°17'39" EAST, 72.30 FEET;

THENCE NORTH 89°27'00" EAST, 312.70 FEET;

THENCE NORTH 74°27'32" EAST, 511.90 FEET;

THENCE NORTH 89°42'39" EAST, 68.31 FEET;

THENCE NORTH 79°29'27" EAST, 123.36 FEET;

THENCE FROM A TANGENT BEARING SOUTH 02°46'06" WEST, CURVING TO THE RIGHT, ALONG THE ARC OF A 926.18 FOOT RADIUS CURVE, CONCAVE EASTERLY, TO WHICH A RADIAL LINE BEARS SOUTH 87°13'54" EAST, THROUGH A CENTRAL ANGLE OF 02°52'53" AND AN ARC LENGTH OF 46.58 FEET, TO WHICH A RADIAL LINE BEARS SOUTH 84°21'01" EAST;

THENCE SOUTH 84°21'01" EAST, 61.84 FEET TO A POINT ON THE WESTERLY LINE OF LAKE MEAD/ I-15 INTERCHANGE;

THENCE ALONG SAID WESTERLY LINE, FROM A TANGENT BEARING SOUTH 19°35'36" WEST, CURVING TO THE LEFT, ALONG THE ARC OF A 686.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, TO WHICH A RADIAL LINE BEARS NORTH 71°24'24" WEST, THROUGH A CENTRAL ANGLE OF 19°48'58" AND AN ARC LENGTH OF 237.26 FEET TO WHICH A RADIAL LINE BEARS SOUTH 88°46'38" WEST;

THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE, FROM A TANGENT BEARING SOUTH 20°11'23" WEST, CURVING TO THE RIGHT, ALONG THE ARC OF A 1035.00 FOOT RADIUS CURVE, CONCAVE NORTHWESTERLY, TO WHICH A RADIAL LINE BEARS SOUTH 69°48'37" EAST, THROUGH A CENTRAL ANGLE OF 04°12'25" AND AN ARC LENGTH OF 76.00 FEET;

THENCE SOUTH 24°23'48" WEST, 136.35 FEET;

THENCE SOUTH 65°36'12" EAST, 104.28 FEET;

THENCE NORTH 88°47'33" EAST, 37.75 FEET TO SAID WESTERLY RIGHT-OF-WAY LINE OF LAKE MEAD/I-15 INTERCHANGE;

THENCE ALONG SAID WESTERLY RIGHT-OF-WAY LINE OF LAKE MEAD/I-15 INTERCHANGE, THE FOLLOWING TWO (2) COURSES:

(1) FROM A TANGENT BEARING SOUTH 21°29'51" EAST, CURVING TO THE LEFT, ALONG THE ARC OF A 686.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, TO WHICH A RADIAL LINE BEARS SOUTH 68°30'09" WEST, THROUGH A CENTRAL ANGLE OF 37°38'35" AND AN ARC LENGTH OF 450.70 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 30°51'34" WEST;

(2) CURVING TO THE RIGHT ALONG THE ARC OF A 600.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 34°50'46" AND AN ARC LENGTH OF 364.91 FEET TO A POINT WHICH A RADIAL LINE BEARS NORTH 65°42'20" EAST;

(3) SOUTH 01°10'01" WEST, 895.42 FEET TO THE TRUE POINT OF BEGINNING.

NOTE: THE ABOVE METES AND BOUNDS DESCRIPTION WAS PREPARED BY:

CRAIG MATSUEDA, PLS
1555 SOUTH RAINBOW BOULEVARD
LAS VEGAS, NEVADA 89146

## EXHIBIT "B"

## RELEASE SCHEDULE

The release price for each parcel shall be an amount equal to $568,182.00 for each acre to be released as reasonably determined by Beneficiary.

24

Hale Lane Peek Dennison and Howard
Attorneys and Counsellors at Law
Las Vegas, Nevada
(702) 222-2500

::ODMA\PCDOCS\HLRNODOCS\651162\1
svm\17408\0359\deed