UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EAGLE SPE NV 1, INC.,<br><br>                       Plaintiff,<br>     v.<br>SOUTHERN HIGHLANDS<br>DEVELOPMENT CORPORATION, et al.,<br><br>                       Defendants. | Case No. 2:12-cv-00550-MMD-PAL<br><br>ORDER<br><br>(Defs.' Motion to Dismiss – dkt. no. 15;<br>Defs.' Motion for Hearing – dkt. no. 20.) |

**I.      SUMMARY**

This case involves the application of a statutory provision codified on June 10, 2011, at NRS § 40.459(1)(c), which places additional limitations upon the right of a successor-creditor to recover on a deficiency. Plaintiff and its parent company, successor-creditors by assignments, have several similar cases pending in this district. (*See* dkt. no. 65*.)* Indeed, this case is strikingly similar to the facts of *Eagle SPE NV I, Inc. v. Kiley Ranch Communities, et al.*, No. 3:12-cv-245-RCJ-WGC, where Plaintiff Eagle SPE NV I, Inc. ("Eagle") raised the same arguments against defendant Kiley Ranch Communities. In construing NRS § 40.459(1)(c), the Court is bound by the Nevada Supreme Court's decision in *Sandpointe Apartments, LLC v. Eighth Judicial Dist. Ct.*, 313 P.3d 849 (Nev. 2013), and guided by decisions by other courts in this district.

Before the Court is Defendants' Motion to Dismiss First Amended Complaint ("Motion"), which raises the interpretation and application of NRS § 40.459(1)(c).[1] (Dkt. no. 15.) The Court has also considered Plaintiff Eagle's response (dkt. no. 17), Defendants' reply (dkt. no. 21) and the parties' supplemental briefs (dkt. nos. 46, 48, 51, 53, 58). As the Court finds that the Motion is appropriate for disposition without oral argument under Local Rule 78-2, Defendants' Motion for Hearing (dkt. no. 20) is denied. Additionally, for the reasons discussed below, Defendants' Motion to Dismiss is granted.

**II.   BACKGROUND**

   **A.   Factual Background**

This case arises out of a default on a line of credit. The facts as alleged in the Complaint are simple and are recited below.

On July 30, 2007, Southern Highland Development Corporation, Olympia Group, L.L.C., and Olympia Land Corporation (collectively "Borrowers") executed a Revolving Line of Credit Promissory Note ("Note") Secured by a Deed of Trust to Colonial Bank, N.A.,[2] in the original principal amount of $25,000,000.00 (the "Note"). The Note was secured by a Deed of Trust and Security Agreement and Fixture Filing with Assignment of Rents dated July 30, 2007, and recorded August 15, 2007 (the "Deed of Trust"), encumbering certain real property located in Clark County, Nevada (the "Property"). The same day, Garry Goett and Guy Inzalaco ("Guarantors"), in their individual capacities and in their positions as trustees of their respective trusts, guaranteed the payment under the Note. The Note was amended thrice thereafter, in December 2007, September 2008, and December 2008.

---

[1] Defendants are Southern Highlands Development Corporation, Olympia Group, L.L.C., Olympia Land Corporation, Garry Goett, Guy Inzalaco, Garry Goett as Trustee of the Goett Family Trust dated September 4, 1987, as amended and restated, and Guy Inzalaco as Trustee of the Inzalaco Family Trust dated November 7, 1997, as amended.

[2] After December 19, 2007, Colonial Bank, an Alabama banking corporation, became the successor to Colonial Bank, N.A., converting Colonial Bank from a national banking association to state-chartered bank.

On August 14, 2009, Colonial Bank was closed by the State Banking Department of the State of the Alabama, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver. On the same day, the FDIC assigned all its rights under the Note, Deed of Trust, and accompanying loan documents to Branch Banking and Trust Company ("BB&T") for $10.00 and other good and valuable consideration.

In November 2009, Borrowers defaulted on the Note. In August 2010, BB&T made a written demand for Borrowers and Guarantors to pay the $24,962,325.00 balance, but they refused payment. As a result, on March 16, 2011, BB&T recorded a Notice of Default and Election to Sell ("Notice of Default") to initiate foreclosure proceedings. On October 21, 2011, First American Title Insurance Company, as Trustee under the Deed of Trust, recorded a Notice of Trustee's Sale ("Notice of Trustee's Sale"). On November 8, 2011, BB&T assigned all its rights under the Note, Deed of Trust, and accompanying loan documents to Plaintiff Eagle, BB&T's wholly owned subsidiary, for $10.00 and other good and valuable consideration.

On November 15, 2011, the Property was sold for $5,340,001.00 to AWH Ventures, Inc. As of that date, the total amount of indebtedness was $25,257,732.36,[3] and the fair market value of the property was $6,630,000.00. Accordingly, there remained an $18,627,732.36 deficiency calculated by subtracting the total amount of indebtedness from the fair market value, which was lower than the actual price for which the Property sold. On November 17, 2011, Eagle made a written demand for Borrowers and Guarantors to pay the $18,627,732.36 deficiency. However, Borrowers and Guarantors failed to pay. This lawsuit followed.

**B.    Procedural Background**

The issues presented in Defendants' Motion have evolved over the course of the last two years as the scope and application of NRS § 40.459(1)(c) has been litigated.

---

[3]This amount included accrued interest, attorneys' fees and costs, property maintenance expenses, and foreclosure costs.

Defendants moved to dismiss Plaintiff's Complaint in June 2012. While the fully briefed motion was pending, Defendants informed the Court that there were pending cases before the Nevada Supreme Court presenting identical issues. After considering the parties' briefs on whether a stay should be issued, the Court granted a stay and dismissed all pending motions without prejudice.

After the Nevada Supreme Court ruled on the pending cases, the Court reopened this case, reinstated Defendants' Motion, and allowed additional briefing on the effect of the recently decided Nevada Supreme Court opinions. Plaintiff and Defendants both filed their respective briefs. While the fully briefed motion was pending, the parties informed the Court of an Order entered by the Honorable Robert C. Jones in *Eagle SPE NV I, Inc. v. Kiley Ranch Communities, et al.*, No: 3:12-cv-245-RCJ-WGC, which warranted consideration and additional briefing. Again, the Court allowed additional briefing on Judge Jones's Order. Accordingly, having allowed extensive and complete briefing on the issues presented in this case, the Court considers the parties' arguments.

## III.   LEGAL STANDARD

On a 12(b)(6) motion, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation

4

and internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (*quoting Twombly*, 550 U.S. at 555)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, a court may take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," such as information on government websites. Fed. R. Evid. 201; *see, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of official information posted on a governmental website, the accuracy of which was undisputed). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## IV.     DISCUSSION

Plaintiff Eagle asserts three claims: (1) deficiency against Borrowers, (2) breach of contract (the Guaranty) against Guarantors, and (3) breach of the implied covenant of good faith and fair dealing (against Borrowers and Guarantors). Defendants contend the first two claims should be dismissed for failure to state a claim because Plaintiff is not entitled to a deficiency judgment under NRS § 40.459(1)(c). Defendants also move to dismiss Plaintiff's third claim, arguing Plaintiff failed to allege facts to support an essential element of the claim.

### A.     Claims Covered Under Nevada's Antideficiency Statute, NRS § 40.459(1)(C)

Under Nevada's statutory scheme, a creditor is entitled to a deficiency judgment if "there is a deficiency of the proceeds of the sale and a balance remaining due" to the creditor or beneficiary of the deed of trust. NRS § 40.455(1). Before June 10, 2011, NRS § 40.459 limited the amount of money that could be awarded against the debtor, guarantor, or surety for their personal liability on a debt upon a foreclosure sale to the lesser of two amounts: (1) the difference between the amount of the debt and the fair market value of the property at the time of sale or (2) the difference between the amount of the debt and the actual sale price of the property. NRS § 40.459(1)-(2) (1993). On June 10, 2011, however, section 5 of Assembly Bill 273 ("AB 273") amended NRS § 40.459 to impose an additional limitation on the amount of deficiency judgment that a successor-creditor may recover. *Sandpointe Apartments*, 313 P.3d at 856. In a deficiency action or suit against a debtor, guarantor, or surety who is personally liable for a debt, this amendment limits the amount available to a successor-creditor who acquired the debt to the least of three amounts: the first two amounts under the existing statute referenced above, or the difference between the fair market value or actual sale price of the property and the amount that the successor-creditor paid to acquire the right to obtain the judgment. NRS § 40.459(1)(a)-(c) (2011).

///

1    The application and interpretation of this statutory amendment, codified at NRS § 40.459(1)(c) ("Subsection (1)(c)"), is at the center of this dispute. Because the foreclosure sale in this case occurred after the statutory amendment became effective,[4] applying Subsection (1)(c) would have no retroactive effect. *See Sandpointe Apartments,* 313 P.3d at 851 (finding that the limitations in Subsection (1)(c) apply to sales that occurred on or after the statute's effective date (June 10, 2011)). The parties unsurprisingly disagree over the statute's interpretation and application as well as the impact of the *Sandpointe Apartments* decision.[5] Moreover, the parties' arguments are understandably muddled as a result of the supplemental briefings. Defendants' primary argument is that because Subsection (1)(c) limits the deficiency that Plaintiff can recover to the difference between the property's fair market value and the price that Eagle paid BB&T for the assignment, and because Plaintiff failed to properly allege any deficiency based on this limitation, Plaintiff fails to state a claim. In response, Plaintiff attempts to limit the *Sandpointe Apartments* decision and argues that (1) Subsection (1)(c) does not apply based on its plain language, and applying it would create absurd results considering the parent-subsidiary relationship between BB&T and Eagle and would violates the Contract and Supremacy Clauses of the U.S. Constitution.

### 1.    Statutory Text

Plaintiff argues that Subsection (1)(c) does not apply to pre-foreclosure transfers such as the assignment in this case. (Dkt. no 48 at 9-11.) Essentially, Plaintiff's argument is that it obtained a debt, i.e., a contingent right to a future deficiency judgment, not a vested right to a deficiency judgment. *Id.* This is the same argument that Plaintiff raised, and that the court rejected, in *Kiley Ranch. See* 2014 WL 1199595 at *5. Plaintiff's interpretation is contrary to the plain language of Subsection (1)(c).

---

[4]The foreclosure sale occurred on November 15, 2011, about five months after the effective date of NRS § 40.459(1)(c).

[5] The parties presented the same arguments as those raised in *Eagle SPE NV I, Inc. v. Kiley Ranch Communities, et al.*, No. 3:12-cv-245-RCJ-WGC, 2014 WL 1199595 at *4 (D. Nev. March 24, 2014).

7

The statute does not contain the limitations that Plaintiff seeks to import. Subsection (1)(c) reads:

> *If the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right*, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs, whichever is the lesser amount.

NRS § 40.459(1)(c) (emphasis added). The statute speaks of the "right" held by the assignor as a "right to obtain the judgment," not as a right to the judgment. For Plaintiff's interpretation to be viable, the statute would have to read: "If the person seeking to enforce the judgment acquired the judgment from a person who previously held that judgment . . . ." *See Kiley Ranch*, 2014 WL 1199595 at *5-6. However, the statute simply does not comport with Plaintiff's interpretation. Moreover, as the Nevada Supreme Court concluded, Subsection (1)(c) "applies to any transfer of the right to obtain a deficiency judgment, regardless of when the right was transferred." *Sandpointe Apartments*, 313 P.3d at 851. Subsection (1)(c) makes no distinction as to when the transfer occurred ─ whether before or after a foreclosure sale.

The plain language of the statute applies in this case. Plaintiff, the person seeking the judgment here, acquired the right to obtain a deficiency judgment via assignment from BB&T, the person who previously held the right to obtain the same deficiency judgment. Accordingly, the statute is facially applicable. That the assignment from BB&T to Eagle occurred before the foreclosure sale does not remove the transaction from the ambit of Subsection (1)(c).

### 2. Parent-Subsidiary Assignments

Plaintiff makes the incredible argument that the transfer between BB&T and Eagle was merely an internal "administrative" assignment and that it would be absurd to not allow a wholly owned subsidiary to realize the profit of its parent company. (Dkt. no. 48 at 8-9.) Plaintiff essentially asks the Court to disregard the separate legal identities between Plaintiff and its parent company. Plaintiff's argument, however, ignores

8

fundamental principles of corporate law by improperly conflating BB&T with Eagle, which are two separate corporate entities. *See Kiley Ranch*, 2014 WL 1199595 at *6 ("Parent companies and their subsidiaries are separate legal entities with distinct rights and responsibilities."). Moreover, the plain language of Subsection (1)(c) refers to "person" and does not discriminate between unrelated entity transfers and related entity transfers.

### 3. The Contract Clause

Plaintiff argues that applying Subsection (1)(c)'s limitations to mortgages that were assigned before the statute's effective date would violate the Contract Clause of the U.S. Constitution, regardless of when the foreclosure sale occurs. U.S. Const. art. I, § 10, cl. 1; (Dkt. no 48 at 12-17.) This argument fails for multiple reasons. First, it hinges on Plaintiff's improper treatment of BB&T and Eagle as the same entity, which they are not. Second, based on that improper conflation, Plaintiff proceeds to make an argument premised on the contract between BB&T and the FDIC, who are not parties to this lawsuit. Finally, Plaintiff's reliance on *Kiley Ranch* is misplaced because this case's timeline demands a different conclusion and does not implicate the Contract Clause in any way.

In *Kiley Ranch*, the assignment in question from BB&T to Eagle occurred before the effective date of Subsection (1)(c). Judge Jones engaged in a thorough Contract Clause analysis and held that Subsection (1)(c) could not "constitutionally apply to assignments made before the statute's effective date." *Kiley Ranch*, 2014 WL 1199595 at *7. He reasoned that applying Subsection (1)(c) retroactively to the assignment from BB&T to Eagle would impair Eagle's pre-existing rights and responsibilities under the assignment and violate the Contract Clause. *Id.* Thus, *Kiley Ranch* found that Subsection (1)(c) could not apply to Eagle. *Id.* However, in dicta, Judge Jones aptly noted that "[t]he application of the statute to post-enactment assignments presumably does not suffer from the same infirmity." *Id.* at *16 n.14.

Initially, the Court notes that for this analysis, the transaction in question is not the assignment from the FDIC to BB&T; rather, the transaction at issue is the assignment

1  from BB&T to Eagle, which occurred after Subsection (1)(c) became effective. Eagle
2  argues, without citation to any contract provision that would be legally binding on Eagle,
3  that "the FDIC considers BB&T and Eagle to be one in the same entity under the
4  purchase-and-assumption agreement."[6] (Dkt. no. 17 at 8 n.3; *see also* dkt. no. 48 at 5.)
5  However, taking all the allegations in the Complaint as true, BB&T and Eagle are not the
6  same legal entity, BB&T and the FDIC are not parties to this litigation, and Eagle has not
7  shown or even alleged that it is the intended third-party beneficiary in the transaction
8  between BB&T and the FDIC, such that the enactment of Subsection (1)(c) could have
9  impaired its rights.[7]

10  Turning to the assignment from BB&T to Eagle, the Contract Clause simply has
11  no application because the assignment occurred after Subsection (1)(c) was enacted.
12  Based on the allegations in the Complaint, at enactment, there was no agreement
13  between Eagle and BB&T; therefore, as alleged, Eagle had no rights and responsibilities
14  for the statute to impair. Accordingly, any application of Subsection (1)(c) to the
15  assignment at issue would be prospective, not retroactive, and would not implicate the
16  Contract Clause.

17  In short, Subsection (1)(c) was effective when Eagle paid consideration to BB&T
18  for the assignment of the Note and Deed of Trust. There was thus no impairment of
19  existing rights to invoke any violation of the Contract Clause.

### 4. The Supremacy Clause

21  Plaintiff contends that application of Subsection (1)(c) to the assignment at issue
22  would violate the Supremacy Clause by interfering with the FDIC's functions to efficiently

---

[6] The Court also takes judicial notice of the Purchase and Assumption Agreement between FDIC and BB&T ("Purchase Agreement"), dated August 14, 2009, *available at* http://www.fdic.gov/bank/individual/failed/colonial-al_P_and_A.pdf.

[7] Eagle also asserts that it "can establish that BB&T paid the book value" for the loan based on the agreement between the FDIC and BB&T. (Dkt. no. 48 at 6.) Even so, this does not show that Eagle paid that same value to BB&T for the loan, and, moreover, the transaction between Eagle and BB&T — not the transaction between the FDIC and BB&T — is at issue here.

dispose of assets. (Dkt. no. 48 at 17-20.) Plaintiff points to the Purchase Agreement's share-loss provisions and asserts that if Subsection (1)(c) applies and Eagle is unable to recover any deficiency, the FDIC will bear 80% of the loss. (Dkt. no. 48 at 19.) Thus, Plaintiff concludes that by forcing the FDIC to bear the burden of Defendants' default, the application of Subsection (1)(c) impairs the FDIC's ability to fulfill its federally mandated role. *Id.*

Federal law operates to preempt state law in instances of clear statutory prescription or where a direct conflict between federal and state law exists. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (citations omitted). State law is preempted when it "frustrates the purpose of national legislation, or impairs the efficiencies of the [ ] agencies of the federal government to discharge the duties for the performance of which they were created." *McClellan v. Chipman*, 164 U.S. 347, 357 (1896) (citation and internal quotation marks omitted).

Plaintiff's argument fails because the Complaint's allegations, taken in conjunction with the judicially-noticed Purchase Agreement, do not establish a legitimate nexus between Eagle and the FDIC that would make the FDIC liable for Eagle's loss. Merely being BB&T's wholly owned subsidiary does not entitle Eagle to benefits and liabilities under the Purchase Agreement. Moreover, as BB&T and Eagle are two separate and distinct legal entities, the Purchase Agreement cannot legally bind Eagle, when Eagle is not a signatory to the Purchase Agreement, and without any indication of an ancillary contract that would be legally binding on Eagle. Simply, there is no factual or legal basis upon which the Court may find that BB&T and Eagle are the same legally bound entity with respect to the Purchase Agreement.

Under Plaintiff's own explanation, the Purchase Agreement obligates the FDIC to reimburse BB&T (not Eagle) for 80% of any loss, up to a threshold amount across all

///

///

///

1 assets included in the Purchase Agreement.[8] (Dkt. no. 48 at 19.) BB&T sold its interest to Eagle, and has already incurred its losses. Applying Subsection (1)(c)'s limitations to cap Eagle's recovery has no effect on BB&T's losses or the FDIC's obligations under the Purchase Agreement. Because there is no nexus between Eagle and the FDIC under the Purchase Agreement, limiting Eagle's recovery does not frustrate the purpose or impair the efficiency of the FDIC.[9]

In sum, the Court rejects Plaintiff's arguments that Subsection (1)(c) does not apply to the assignment from BB&T to Eagle to limit Plaintiff's recovery. But this conclusion does not doom Plaintiff's first two claims. The Court finds that amendment would not be futile because Subsection (1)(c) limits Plaintiff's recovery, and although the Complaint alleges that Plaintiff paid consideration to receive the assignment, it does not allege the actual amount paid or whether the amount paid exceeded the actual sale price (or fair market value) of the Property. Moreover, Plaintiff may still raise constitutional challenges to the application of Subsection (1)(c). The Court finds that Plaintiff's allegations fail to establish the intended third-party beneficiary status under the Purchase Agreement it would need to assert a Contract Clause argument. Plaintiff also fails to establish a sufficient contractual nexus between itself and the FDIC to support a preemption argument under the Supremacy Clause. However, because the Court cannot say that amendment will not cure these deficiencies, the Court will allow Plaintiff leave to amend to cure deficiencies implicated by the Contract and Supremacy Clauses.

### B.     Breach Of Covenant Of Good Faith And Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe Cnty.*,

---

[8]The Purchase Agreement contains a "Successors" clause that states that the contract is "binding on the successors and assigns of" BB&T. Purchase Agreement at 38, cl. 13.5. But it is unclear how a non-signatory would be bound absent another separate agreement between BB&T and Eagle.

[9]For this same reason, Plaintiff's reliance on Judge Mahan's Supremacy Clause analysis in *Branch Banking & Trust v. Frank*, No. 2:11-cv-1366 JMC (CWH), 2013 WL 6669100 (D. Nev. Dec. 17, 2013), is misplaced.

784 P.2d 9, 9 (Nev. 1989) (*quoting* Restatement (Second) of Contracts § 205). To prevail on a breach of implied covenant of good faith and fair dealing claim, a plaintiff must show that (1) the plaintiff and the defendant were parties to a contract, (2) the defendant owed a duty of good faith and fair dealing to the plaintiff, (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract, and (4) the plaintiff's justified expectations were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 2008). Damages may be awarded against a defendant that performs a contract in a manner that is unfaithful to the contract's purpose or where a defendant deliberately contravenes the intention and spirit of the contract, thus denying plaintiff's justified expectations. *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994); *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

Here, Plaintiff has not alleged the third element ─ that the defendant breached his duty by performing "in a manner that is unfaithful to the purpose of the contract." *Perry*, 900 P.2d at 338 (internal quotation marks omitted). Aside from the fact that the only allegation in this regard is a legal conclusion not afforded the assumption of truth, Plaintiff has not alleged that the Borrowers and Guarantors performed, let alone performed in a manner unfaithful to the contract's purpose. In fact, Plaintiff alleges just the opposite ─ that the Borrowers and the Guarantors acted unfaithful to the contract's purpose "*by failing to comply with the terms and obligations* of the Note and the Guarantee." (Dkt. no. 14 ¶ 48 (emphasis added).) Although these allegations could support a breach of contract claim, they are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing. As Plaintiff has failed to allege facts to support an essential element of its claim, the claim is dismissed. However, because the Court cannot say that these deficiencies cannot be cured by amendment, the Court will allow Plaintiff leave to amend to cure deficiencies in this claim.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is ordered that Defendants' Motion to Dismiss (dkt. no. 15) is granted. Dismissal is without prejudice. Plaintiff may file a Second Amended Complaint to the extent Plaintiff is able to cure the noted deficiencies within fourteen (14) days of this Order. Failure to file an amended complaint within fourteen (14) days will result in dismissal of the claims with prejudice.

Defendants' Motion for Hearing (dkt. no. 20) is denied.

DATED THIS 5th day of August 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

14