UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EAGLE SPE NV 1, INC., | Case No. 2:12-cv-00550-MMD-PAL |
| Plaintiff, | ORDER |
| v. | |
| SOUTHERN HIGHLANDS DEVELOPMENT CORP., *et al.,* | |
| Defendants. | |

**I.    SUMMARY**

This case involves application of a statutory provision formerly codified at NRS § 40.459(1)(c) ("Subsection (1)(c)"), which placed additional limitations upon the right of a successor-creditor to recover on a deficiency. Before the Court are competing motions: (1) Plaintiff Eagle SPE NV 1's ("Eagle") Motion for Summary Judgment as to Liability and Application for Deficiency Judgment Hearing Pursuant to Nevada Revised Statute § 40.457 ("Plaintiff's Motion") (ECF No. 132); and (2) Defendants' Motion for Summary Judgment ("Defendant's Motion") (ECF No. 133).[1] The Court has reviewed the parties' responses, replies and Eagle's supplement to its reply in connection with these Motions. (ECF Nos. 137, 142, 138, 143, 145.) For the reasons discussed below, Defendants' Motion is granted and Plaintiff's Motion is denied.

---

[1] LR IA 10-3 addresses exhibits. LR IA 10-3(d) requires an index of exhibits. LR IA 10-3(e) provides that the cover sheet that references an exhibit "must include a descriptor of the exhibit." Plaintiff did not provide an index of its exhibits or include a descriptor for each exhibit.

## II.  RELEVANT BACKGROUND

The relevant facts are undisputed.

On July 30, 2007, Southern Highland Development Corporation, Olympia Group, L.L.C., and Olympia Land Corporation (collectively "Borrowers") executed a Revolving Line of Credit Promissory Note ("Note") Secured by a Deed of Trust to Colonial Bank, N.A. ("Colonial")[2] in the original principal amount of $25,000,000.00 (the "Note"). (ECF No. 133-3.) The Note was secured by a Deed of Trust and Security Agreement and Fixture Filing with Assignment of Rents dated July 30, 2007, and recorded August 15, 2007 (the "DOT"), encumbering certain real property located in Clark County, Nevada (the "Property"). (*Id.*; ECF No. 133-5.) The same day, Garry Goett and Guy Inzalaco ("Guarantors"), in their individual capacities and in their positions as trustees of their respective trusts, executed a certain guarantee ("the Guarantee") where they agreed to guarantee payment under the Note. (ECF No. 133-6.) The Note was amended thrice thereafter: in December 2007, September 2008, and December 2008. (ECF Nos. 132-5, 132-6 & 132-7.)

On August 14, 2009, Colonial was closed by the State Banking Department of the State of Alabama, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver. (ECF No. 132-1 at 5.) On the same day, the FDIC assigned a substantial portion of Colonial's assets, including the Note, DOT, and accompanying loan documents, to Branch Banking and Trust Company ("BB&T") through a Purchase and Assumption Agreement ("the Agreement"). (*Id.*; ECF No. 132-8; ECF Nos. 133-8 & 133-9.) The Note was made payable to BB&T. (ECF No. 132-8.)

On November 12, 2009, the maturity date of the Note, Borrowers failed to pay the outstanding principal balance due under the Note. (ECF No. 132-1 at 5.) BB&T made a written demand for payment in August 2010. (*Id.*; ECF No. 132-9.) Borrowers and Guarantors failed to pay the balance owing under the Note. (ECF No. 132-1 at 5.)

---

[2]After December 19, 2007, Colonial Bank, an Alabama banking corporation, became the successor to Colonial Bank, N.A., converting Colonial Bank from a national banking association to a state-chartered bank. (ECF No. 132-1 at 4.)

On November 8, 2011, BB&T assigned its rights under the Note, DOT, the Guarantee and other loan documents to Eagle via two assignment documents ("the Assignments"). (*Id.* at 5-6; ECF No. 132-10.) On November 15, 2011, Eagle effectuated the sale of the Property at a non-judicial foreclosure sale for a cash bid in the amount of $5,340,001.00. (ECF No. 132-1 at 6; ECF No 133-16.) On November 17, 2011, Eagle made a written demand on Borrowers and Guarantors to pay the deficiency. (ECF No. 132-13.) They refused. (ECF No. 132-1 at 6.)

After Eagle initiated this action, the Court dismissed the Complaint with leave to amend. (ECF No. 66 ("First Dismissal Order").) The Court subsequently dismissed the claim for breach of the implied covenant of good faith and fair dealing in the Second Amended Complaint ("SAC"), permitting Eagle to proceed on a claim for deficiency and two claims for breach of contract. (ECF No. 93 ("Second Dismissal Order").)

### III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts

and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Nevada's Antideficiency Statute

Under Nevada's statutory scheme, a creditor is entitled to a deficiency judgment if "there is a deficiency of the proceeds of the sale and a balance remaining due" to the creditor or beneficiary of the deed of trust. NRS § 40.455(1). Before adoption of Section (1)(c), NRS § 40.459 limited the amount of money that could be awarded against the debtor, guarantor, or surety for their personal liability on a debt upon a foreclosure sale to the lesser of two amounts: (1) the difference between the amount of the debt and the fair market value of the property at the time of sale or (2) the difference between the amount of the debt and the actual sale price of the property. NRS § 40.459(1)-(2) (1993). On June 10, 2011, however, section 5 of Assembly Bill 273 amended NRS § 40.459 to impose an additional limitation on the amount of deficiency judgment that a successor-

///

///

creditor may recover. *Sandpointe Apartments, LLC v. Eighth Judicial Dist. Ct.*, 313 P.3d 849, 856 (Nev. 2013). Subsection (1)(c) then[3] read:

> If the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, [a deficiency judgment could be limited to] the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater.

2011 Nev. Stat. 1743. Under this provision, a successor-creditor could only recover the difference between the consideration it paid for the right to a deficiency judgment and the actual sale price or fair market value of a property. Thus, unless a successor-creditor paid more for the right to obtain a deficiency judgment than a property's fair market or sale value, Subsection (1)(c) foreclosed the successor-creditor from recovering a deficiency.

### B.     The Court's Prior Order

In the First Dismissal Order, the Court found that Subsection (1)(c) applies to Eagle's deficiency claim. (ECF No. 66.) In doing so, the Court rejected Eagle's argument that the Court should focus on the assignment from the FDIC to BB&T and disregard the assignment from BB&T to Eagle in light of Eagle's parent-subsidiary relationship with BB&T.[4] (*Id.* at 7-12.) Thus, to prevail on its deficiency claim, Eagle must show that there

---

[3] Section 40.459 was amended and reorganized in May 2015. *See* 2015 Nev. Stat., Ch. 149, Sec. 1 (Westlaw) (codified as amended at NRS § 40.459). Subsection (1)(c) now appears in NRS § 40.459(3)(c), which limits a successor creditor's recovery after obtaining a deficiency judgment on a "property upon which the debtor, guarantor or surety maintains his or her principal residence." NRS § 40.459(3)(c). Defendants argue, and Plaintiff does not dispute, that this latest amendment does not have retroactive application here. (ECF No. 133 at 11-12.) The Court agrees.

[4] The Court expressly rejected Eagle's preemption argument. (ECF No. 66 at 10-12.) Eagle reiterates its preemption argument in its opposition to Defendants' Motion. (ECF No. 138 at 30.) While the Court left open the possibility that Eagle may still raise constitutional challenges (*id.* at 12), it was not an invitation to reiterate arguments already raised. The Court declines to reconsider its earlier ruling that there is a distinction between the assignment from the FDIC to BB&T and the assignment from BB&T to Eagle. With respect to former assignment, it is worth noting that this Court found in another case that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 preempts Subsection (1)(c) from applying to the deficiency action brought by BB&T in that case. *See Branch Banking and Trust Co. v. Rossal,* Case No. 2:12-cv-01298-MMD-GWF (D. Nev. Sept. 29, 2015).

1 is a positive difference between the actual sale price of the Property and "the amount of the consideration [Eagle] paid" to acquire the right to obtain the judgment pursuant to Subsection (1)(c).

Defendants' Motion argues that Eagle cannot make this showing and is barred from recovering a deficiency. (ECF No. 133.) Eagle's Motion seeks judgment on the issue of liability on its breach of contract claims. Because a ruling on Defendant's Motion may be dispositive of Eagle's breach of contract claims, the Court will address Defendants' Motion first.

### C.  Defendants' Motion

Defendants contend that Plaintiff cannot show any deficiency because of the Court's March 14, 2016, ruling. There, the Court found that Plaintiff was unable to present any evidence of consideration other than what it had already produced, i.e., the Assignments and their recited consideration of $10.00 and "other value consideration." (ECF No. 133 at 12-14.) In response, Plaintiff does not dispute the Court's March 14, 2016, ruling but argues that the consideration is evidenced in the nature of its "arrangement" with BB&T, which "includes its obligation to transmit its recovery in this case back to BB&T." (ECF No. 138 at 16.) Eagle contends that Subsection (1)(c) "does not cap Eagle's recovery in this case because part of its consideration is the recovery in this case." Eagle's argument, as Defendants have pointed out, is deficient in several ways.

First, the Court agrees with Defendants that pursuant to the Court's March 14, 2016, ruling Eagle cannot offer any evidence that it has failed to disclose in support of its argument as to the amount of consideration paid. Eagle had objected to Defendants interrogatories and requests for production on the subject of the consideration it paid to BB&T to obtain the Note. (ECF No. 107 at 1; ECF No. 105 at 22-24.) At the March 14, 2016, hearing, Eagle's counsel represented that "Eagle simply does not intend to present any evidence of the consideration paid to obtain the property at issue in this case other than the transfer document already produced, which recites consideration of

$10.00." (ECF No. 107 at 3.) Based on such representation, the Court sustained Eagle's objections and imposed a preclusion order under Rule 37(c). (*Id.* at 4.) Defendants point out that Eagle relies on two items of evidence produced after the March 14, 2016, ruling to oppose Defendants' Motion: (1) an email between Thomas Brent Hicks and the FDIC; and (2) a wire transfer of the proceeds of the sale from Eagle to BB&T. (ECF No. 143 at 4.) The Court agrees with Defendants that Eagle is precluded from relying on such evidence and will not consider them in deciding Defendants' Motion.

Second, Defendants argue that the March 14, 2016, ruling applies to preclude Eagle from relying on Mr. Hicks' Declaration offered in support of Plaintiff's opposition ("Second Hicks Dec."). The Court does not construe the March 14, 2016, ruling to preclude Plaintiff from offering a declaration that had not been provided before March 14, 2016. However, as noted, Plaintiff is precluded from offering evidence as to the amount of consideration it paid. In the Second Hicks Dec., Mr. Hicks stated that "BB&T and Eagle have an arrangement whereby Eagle's proceeds from the operation or sale of OREO ['other real estate asset'] assets are remitted to BB&T." (ECF No. 138-1 at 5.) This statement is evidence of the amount of consideration. Yet, Plaintiff objects to Defendants' interrogatories asking for information on the "amount of monetary consideration" and "other good and valuable consideration" that Eagle provided to BB&T. (ECF No. 107 at 1; ECF No. 105 at 22-24.) In sustaining Plaintiff's objections, the Court clearly warned Plaintiff that it would be precluded from offering additional evidence of the amount of consideration. (ECF No 107.) The fact that this "arrangement" is not in writing is of no import because the Court's March 14, 2016, ruling is not limited to written documents. Such a limitation would have permitted Plaintiff to have it both ways — oppose discovery into the issue of the amount of consideration it paid by arguing in part that the amount of consideration is not relevant and later offer evidence of a verbal "arrangement" to support the amount of consideration. Thus, the Court agrees with Defendants that Plaintiff is precluded from offering evidence of an "arrangement" with BB&T for Eagle to transfer the proceeds it receives to BB&T.

Third, even if the Court considers Mr. Hicks' statement about the arrangement calling for Eagle to forward the proceeds from the sale of the Property to BB&T, the Court agrees with Defendants that Plaintiff should not be permitted to raise this new claim for the first time in opposing summary judgment. There is no question that the consideration Eagle paid has been a contested issue in this case all along. In the First Dismissal Order, the Court found that the Complaint failed to allege the "actual amount of consideration paid or whether the amount paid exceeded the actual sale price (or fair market value) of the Property." (ECF No. 66 at 12.) While the Court found that the allegations in the SAC — that "there is a deficiency balance remaining due to Plaintiff under the Note that exceeds $75,000" — is sufficient to state a claim for relief, the amount of consideration obviously remains an issue that Defendants seek to challenge. Yet, Plaintiffs objected to discovery into the consideration issue and waited until Defendants' Motion to assert that the amount of consideration includes Plaintiff's "obligation to transmit its recovery in this case back to BB&T." (ECF No. 138 at 14.) Plaintiff could have easily responded to Defendants' discovery requests in this way but elected to accept the Court's order precluding evidence of the amount of consideration other than what it had produced in discovery. Under these circumstances, the Court will not consider Eagle's new argument.[5]

Disregarding Eagle's argument that the amount of consideration it paid "includes the obligation to transmit its recovery in this case back to BB&T," Eagle has failed to offer specific evidence to show that the amount of consideration it paid was more than the sale price of the Property. Accordingly, Defendants have demonstrated that Eagle is

///

---

[5] Plaintiff argues that "common sense dictates that a bank is not going to simply give away a $26.3 million loan for no more than $10." (ECF No. 138 at 14.) However, accepting Defendants' argument does not necessarily mean Eagle paid $10.00 as consideration; it just means there is no evidence that more consideration was provided based on what has been produced in the case. Moreover, common sense would also dictate that a company would not agree to pursue collection on a $26.3 million loan, assume any owner-related liability, turn the entire proceed over to the bank, and still be out $10.00.

not entitled to a deficiency under Subsection (1)(c). The Court will grant summary judgment in favor of Defendants on the deficiency claim.

### D. Breach of Contract Claims

Defendants insist that the damages Plaintiff is seeking for its two breach of contract claims are subject to the same limitation as the deficiency claim. (ECF No. 133 at 14.) Plaintiff offers no response. In fact, Plaintiff essentially concedes this point. In Plaintiff's Motion, Plaintiff argues that it should prevail on its breach of contract claims and the Court should set a hearing as required under NRS § 40.455 to determine the award of a deficiency judgment. (ECF No. 132 at 9.) Thus, the Court will grant summary judgment in favor of Defendants on Plaintiff's breach of contract claims.

### E. Plaintiff's Motion

Because the Court grants summary judgment in favor of Defendants on Plaintiff's breach of contract claims, Plaintiff's Motion for judgment on the issue of liability of these two claims is denied.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of their Motions.

It is ordered that Defendants' motion for summary judgment (ECF No. 133) is granted. Plaintiffs' motion for summary judgment on liability (ECF No. 132) is denied.

The Clerk is directed to enter judgment in favor of Defendants and close this case.

DATED THIS 22nd day of March 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE